## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

**PRISCILLA JULIAN,**

      **Plaintiff,**

**v.**                                **CASE NO.:**

**BIOMARIN PHARMACEUTICALS**
**INC, a Delaware Profit Corporation,**      **JURY TRIAL DEMANDED**

      **Defendant.**

_____/

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff Priscilla Julian ("Ms. Julian") makes the following allegations of religious discrimination and retaliation for her complaint against Defendant BioMarin Pharmaceuticals, Inc. ("Defendant BioMarin").

## INTRODUCTION

1.    In August 2021, Defendant BioMarin mandated that all its employees receive the Covid-19 vaccination as a condition of continuing their employment ("Vaccine Mandate").

2.    Certain BioMarin employees, including Ms. Julian, objected to receiving these vaccinations because of their sincerely-held religious beliefs.

3.    Ms. Julian, who was a "Remote Clinical Coordinator," requested a religious accommodation from Defendant BioMarin to exempt her from taking the Covid-19 vaccine so that she could continue employment.

4. Defendant BioMarin denied Ms. Julian's request for a religious exemption and terminated her employment.

5. Based on Defendant BioMarin's implementation of the Vaccine Mandate and Defendant's refusal to grant Ms. Julian's request for a religious exemption, Ms. Julian asserts claims of religious discrimination and retaliation pursuant to Title VII and pursuant to the Florida Civil Rights Act of 1992 ("FCRA").

## JURISDICTION AND VENUE

6. Ms. Julian has fulfilled the jurisdictional requirements of Title VII of the Civil Rights Act of 1964, including filing a charge of religious discrimination and retaliation with the Equal Employment Opportunity Commission ("EEOC") and receiving a right to sue letter from the EEOC, all in compliance with 42 U.S.C. § 2000e-5(f)(1).  The EEOC right to sue letter is attached as **Exhibit A**.

7. Upon filing the charge with the EEOC, Ms. Julian fulfilled the jurisdiction requirements of the Florida Civil Rights Act of 1992 (FCRA), pursuant to Section 760.11(1), Florida Statutes, which provides that a complaint of employment discrimination in violation of the FCRA may be filed with the EEOC in lieu of filing the complaint with the Florida Commission on Human Relations ("FCHR").

8. This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331, as Ms. Julian asserts claims arising under federal statute.  This Court

further has supplemental jurisdiction over Ms. Julian's state law claims pursuant to 28 U.S.C. § 1367.

9.     This Court maintains personal jurisdiction over Defendant BioMarin because Defendant's contacts with Florida and this judicial district are sufficient for the exercise of jurisdiction over Defendant to comply with traditional notions of fair play and substantial justice.

10.     Defendant BioMarin is subject to the provisions of Title VII because Defendant BioMarin is engaged in commerce and employs more than fifteen employees in each of twenty or more calendar weeks in the current or preceding calendar year under 42 U.S.C. § 2000e (b).

11.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b)(1-2) because Defendant BioMarin conducts business in this judicial district and a substantial part of the acts and/or omissions giving rise to the claims set forth herein occurred in this judicial district.

## PARTIES

12.     Plaintiff Priscilla Julian is a former employee of Defendant BioMarin and resides in Tampa, Florida.

13.     Defendant BioMarin is a Delaware for-profit corporation, with a registered office at 2711 Centerville Road, Suite 400, Wilmington, Delaware, 19808. Defendant develops therapies for people with rare genetic diseases.

14.    The "campus" for Defendant's North American Headquarters is located in San Rafael, California.

**FACTS**

**Ms. Julian was a Tampa-based employee responsible for coordinating encounters between field staff and patients receiving care from Northeastern U.S. Clinics**

15.    Ms. Julian, a Registered Nurse and Florida resident, lived in Tampa, Florida, at the time of her hire in 2018 (pre-pandemic) and worked remotely throughout the duration of her employment with Defendant BioMarin.

16.    Ms. Julian had been employed with Defendant BioMarin with the same job – Remote Clinical Coordinator – since April 2018.  (At the time of her hire, the job was known as "Phone-based Clinical Coordinator.")

17.    Defendant BioMarin supports clinics across the United States.  Each region is assigned a Remote Clinical Coordinator.  Ms. Julian's region was the Northeast – including the Boston area.  Her job responsibilities centered upon providing patient support for patients receiving care from the Northeast Clinics.  Her role did not require in person contact.

18.    Other BioMarin employees who lived near the patients ("Field Coordinators") had job duties that required in person contact with patients; Ms. Julian coordinated encounters between the Field Coordinators and the Northeast clinics patients from her home office in Tampa.

19.    Ms. Julian's job required her to work from her phone and computer, which included contacting by phone her patients and Field Coordinators in the

Northeast.  After the pandemic, Ms. Julian also utilized Zoom (or other web-based platforms) to communicate with her patients and the Field Coordinators.

20.    Ms. Julian's job description clearly stated that her work was remote: "RCC-PKU [Remote Clinical Coordinator] work out of their home."

21.    The only non-remote requirement in the job description for "Remote Clinical Coordinator" was for "internal and professional meetings."  Since March 2020, those meetings had been conducted remotely.

22.    Upon information and belief, the January 2022 company-wide meeting that occurred after BioMarin terminated Plaintiff was initially planned to be conducted in person.  But BioMarin ended up conducting that meeting remotely.

23.    As a Remote Clinical Coordinator, Ms. Julian was paid a base salary by Defendant BioMarin and was eligible for a bonus in the forms of cash and stock.

### Defendant BioMarin created an online portal and required employees to upload their vaccination cards

24.    In a memo dated April 15, 2021, Defendant BioMarin communicated to its "U.S. BioMarin Colleagues" that all vaccinated employers were "required to upload a photo" of their vaccination cards to BioMarin's online portal by June 22, 2021.  The memo also stated that a random drawing would be conducted among the compliant employees, with one employee receiving a cash award of $1,000.00 and forty other employees receiving a gift card for $100.00.  The memo cited the "benefits that vaccinated employees can expect to enjoy in both their personal and work lives" for the basis of BioMarin's inability to "**overstate the importance of getting**

**vaccinated now**." (emphasis in original).  The memo concluded, "If you are among the small minority of our employees who are not vaccinated, we strongly encourage you to get vaccinated ASAP," and then provided information about how to access "free vaccinations."

25.    On June 12, 2021, BioMarin sent via email a communication to its "Global BioMarin Colleagues," again urging that "small minority" of its employees who were still unvaccinated to join the club: "As we are increasingly seeing in the decisions from regional health authorities around the world, vaccinated individuals are enjoying greater freedoms and fewer restrictions than those who are unvaccinated."  The communication reminded BioMarin's U.S. Employees that they were required to upload of photo of their vaccine card to the portal by June 22, 2021, noting, "To be clear, this is not a vaccine mandate."

26.    On June 25, 2021, Defendant BioMarin sent Ms. Julian an email with a link to a "survey," explaining that she was receiving the survey because "as of June 24," she was "not registered with WorkCare as a COVID vaccinated person."  The email concluded, "If you don't respond by June 30, 2021, and until you attest that you have been vaccinated, BioMarin will consider you an unvaccinated individual."

27.    Defendant BioMarin continued to push the vaccination agenda, even though at least by July 20, 2021, it knew that the Covid-19 vaccine did not prevent infection or transmission.  In an email on that date from Peggy Ference, Ms. Julian's supervisor, with the subject line "Patient visits," she stated, ". . . I am highly recommending that you wear a mask, gloves, and where possible socially distance

for your in-home patent visits.  There are a number of breakthrough Covid cases occurring in *fully vaccinated people* and we do not want to unintentionally expose our patients to Covid."  (emphasis added).

28.    An email sent on August 3, 2021, from Kim Hillis, BioMarin Vice President of U.S. Field Operations, addressed to Ms. Julian, asked Ms. Julian to "officially notify HR via email of [her] vaccination status by Friday, August 6, 2021," which would "provide [BioMarin] a foundation by which to make necessary employment and business decisions to best serve" patients and health care providers.

**Defendant BioMarin issued its Covid-19 Vaccine Mandate**

29.    On August 31, 2021, Ms. Julian received notice via email from Defendant BioMarin that it was requiring her to be vaccinated with a Covid-19 vaccine on or before October 15, 2021 ("Vaccine Mandate").

30.    Defendant BioMarin's Vaccine Mandate required all "Northern California Essential Onsite colleagues," all "U.S. Field colleagues," all "U.S. new hires," and any other employee desiring to visit "campus," including colleagues working offsite, to be "fully vaccinated against Covid-19 by October 1."

31.    The August 2021 Mandate also stated: "As a company laser-focused on engaging in scientific discovery to develop transformative therapies, it is not surprising that over 90 percent of our U.S. employees have already verified that they have been vaccinated."

32.    The reason given for requiring the vaccine for the remaining 10 percent of U.S. employees was to "continue to protect the health of our colleagues, your

families, our visitors, and those external stakeholders with whom we interact by adhering to the science on how to keep people safe."

33.     BioMarin never communicated to its employees the data or studies that provided the basis for that "science."

34.     Regarding the "Essential Onsite colleagues in Northern California," the Mandate stated that the vaccine requirement "takes into account that our Essential Onsite colleagues regularly work in very close quarters with one another, without the ability to keep sufficient distance, and *the majority of BioMarin COVID-19 cases in recent month have occurred within this population*." (emphasis added)

35.     The Mandate stated that, for the "U.S. Field colleagues," the vaccine requirement "takes into account that our U.S. Field colleagues *meet regularly in-person with internal and external stakeholders*, many of whom are caregivers for very vulnerable populations.  Moreover, for our Field colleagues, the rapidly increasing trend among hospital and other health care environments is to only allow vaccinated individuals to enter and meet with external stakeholders."  (emphasis added)

36.     Ms. Julian's role did not include meeting in-person with internal or external stakeholders or entering hospitals or "other health care environments."

37.     Neither were Ms. Julian's patients part of a "vulnerable population." The patients have Phenylketonuria ("PKU"), a rare genetic disorder that prevents the normal digesting of proteins, which can cause brain damage.  However, the immune system of PKU patients is not compromised.

38.    The Mandate also stated, "To be clear, we are not mandating vaccination for existing colleagues who *are working offsite at this time.*"   (emphasis added) The "offsite" employees were IT employees, and, like Ms. Julian, worked from home and had never worked at headquarters or in a position out in the field.

39.    The next day, on August 31, 2021, Peggy Ferrence, Ms. Julian's supervisor, and the director of PKU, forwarded the same August 2021 Mandate communication, including a note to Ms. Julian, "Making sure that you saw this and understand you're considered US Field Personnel."

40.    The August 2021 Mandate communication included a "FAQ" hyperlink with "information on how to request an exemption or deferral from the requirements for medical or religious reasons."

41.    On September 20, 2021, VP Kim Hillis sent Ms. Julian an email stating that she was "receiving this letter" because she had "not entered proof of COVID-19 vaccination into WorkMatters or otherwise contacted Benefits to show proof of [her] vaccination."   The letter reminded Ms. Julian that "absent a medical or religious exemption, onsite essential and field employees must be fully vaccinated no later than October 15, 2021."   The letter stated, "The latest information we have from you is that, despite the vaccination mandate, you choose to remain unvaccinated."

**Plaintiff Priscilla Julian submitted her request for religious exemption**

42.    Ms. Julian is a devoted Christian who believes that taking a vaccine violates what the Bible commands; it violates her conscience, religiously and morally, to take the Covid-19 vaccine.   Ms. Julian has a religious and moral

objection to all vaccines, including the Covid-19 vaccine.  Her religious objections include, but are not limited to, the following: (1) vaccines contain cells derived from animal tissues and animal DNA, and the mixing of human and animal blood is against the Bible's mandates; (2) some vaccines, including the Covid-19 vaccines, either contain fetal cells or were developed using a fetal cell line from an aborted fetus, and being forced to inject a vaccine developed using cells from an aborted fetus is abhorrent to Ms. Julian, whose Christian beliefs strongly oppose abortion; and (3) taking a vaccine is a betrayal of her faith because it exalts man over God.

43.    Ms. Julian also has strongly-held beliefs against coerced injections of any drug – and especially experimental drugs.

44.    Because of her strongly held religious and moral beliefs against taking the Covid-19 vaccine, on September 22, 2022, with a seven-page letter setting forth her beliefs, Ms. Julian submitted her request for a religious exemption from Defendant BioMarin's Covid-19 vaccination mandate.

45.    Her request for religious exemption concluded: "As a faithful and devout Christian, I am exercising my right and free will to follow my moral conscience.  At the end of the day, I am held accountable for my decisions and actions.  I will be judged for how I lived, followed, and obeyed Christ.  It is my hope that my sincere decision to decline vaccinations upon my personal and genuine religious beliefs will be honored and respected. . . . I pray this exemption will be granted because I love my job at BioMarin and am so proud to be a part of this team."

46. In Defendant BioMarin's guidance for submitting a request for religious exemption, it was noted that BioMarin might reach out to a requestor's pastor or clergy. Ms. Julian offered to submit a letter from her pastor as well as financial documents showing her practice of tithing; however, Defendant BioMarin never requested any of the documents.

47. On October 7, 2021, BioMarin responded to Ms. Julian, questioning the clarity and consistency of her religious objection to the Covid-19 vaccine and effectively denying her request, stating that the only "accommodation" they could offer her was "an unpaid leave of absence."

48. The unpaid leave would be indefinite, as it would only end if the pandemic itself "ended," a "treatment" for Covid-19 was found, Ms. Julian's position needed to be replaced, or she finally agreed "*to get the vaccine*." (Emphasis added). It defies logic that an accommodation of an employee's religious beliefs could be conditioned on the employee abandoning those very same religious beliefs.

49. Inexplicably, as Ms. Julian did not perform "face-to-face" interactions with her patients, Defendant stated that "excusing" her from such work would "pose an operational and financial undue hardship on BioMarin."

50. Any hardship from being prevented from "face-to-face" interactions with her colleagues was imagined, as there had been no face-to-face interaction during the entire pandemic, as Defendant itself was preventing such interaction. Ms. Julian knows of no colleague on her team who would have objected to face-to-face interaction with her.

51.     Moreover, Ms. Julian communicated to Defendant that she would be willing to pay for any hotel costs should she be required to quarantine prior to any company meetings.

52.     Ms. Julian also offered to take Covid-19 tests and wear personal protective equipment when she met with colleagues.

53.     Ms. Julian would have willingly taken these precautions if she had any face-to-face meetings with patients, although it was extremely unlikely that such meetings would have even occurred.

54.     For a *remote* clinical coordinator to meet with a patient in person was the exception, not the rule.  In person meetings with patients were not part of Ms. Julian's job description.

55.     A remote field coordinator was only authorized to travel to meet a patient in person if the remote field coordinator submitted a request to Defendant BioMarin and the request was approved because Defendant BioMarin was already paying the regional field coordinators to perform the task of in person patient meetings.

56.     Tellingly, on September 24, 2021, almost a month *after* Defendant BioMarin issued its Vaccine Mandate and *two days* after Ms. Julian submitted her request for religious exemption, Defendant added a requirement to the job description for Remote Clinical Coordinator: a small amount of travel time (15%) would now be part of the job.

57.    Ms. Julian had only met in person with one patient during her career with BioMarin, and that was on her own initiative because she really wanted to help a certain patient who needed a little extra assistance and encouragement.  She was not asked to meet with that patient and even had to make a special request to get the travel approved.

58.    Moreover, any perception of restricted travel was self-imposed by Defendant BioMarin.  Travel by unvaccinated persons was never restricted within the United States.

59.    Defendant was thus not facing any burden.  Clearly, the end result was going to be a denial of the request for religious accommodation, however Defendant BioMarin would get there.  No individualized assessment was made and no effort whatsoever to accommodate was made.  If any position would have been extremely easy to accommodate, it was Ms. Julian's – as a "*Remote* Field Coordinator."

**Despite the absence of any undue burden, Defendant BioMarin terminated Ms. Julian for her religious beliefs and in retaliation for requesting a religious accommodation**

60.    On October 15, 2021, Ms. Julian was terminated, despite working for Defendant BioMarin in a remote position that required no patient contact (other than the "15% travel" requirement that was added *two days after* Ms. Julian submitted her request for religious exemption).

61.    Defendant terminated Ms. Julian because of her refusal to violate her personally-held religious beliefs by getting the Covid-19 vaccine and for retaliation for submitting a request for religious accommodation.

62.     To the best of her knowledge, Defendant BioMarin did not grant any employee's request for religious exemption from the Covid-19 vaccination mandate.

63.     Defendant BioMarin treated vaccinated employees more favorably.  Per Ms. Julian's information and belief, at least one vaccinated employee who felt uncomfortable meeting patients in person and traveling to company meetings (despite being vaccinated) requested an accommodation to continue meeting patients and attending meetings virtually.   Defendant BioMarin granted that employee's request.

64.     Permitting this vaccinated employee to meet with patients and attend meetings virtually demonstrates that Defendant BioMarin would not have been unduly burdened by permitting Plaintiff Julian from continuing to attend the few meetings a year virtually or permit Plaintiff Julian to quarantine or test prior to attending those few meetings, as Plaintiff Julian offered.

65.     Ms. Julian lost not only her income and benefits but all her stock options, which had been given to her as a bonus for her work performance.

66.     Ms. Julian has retained Campbell Trohn Tamayo & Aranda, P.A. to represent her in this litigation and has agreed to pay a reasonable fee for the firm's services.

## COUNT I

### RELIGIOUS DISCRIMINATION – DISPARATE TREATMENT
### IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964
### 42 U.S.C. § 2000e

67.     Plaintiff Priscilla Julian restates and re-alleges the allegations of paragraphs 1 through 66 above.

68.     Defendant BioMarin is an "employer" within the meaning of 42 U.S.C. § 2000e(b).

69.     Ms. Julian is an "employee" within the meaning of 42 U.S.C. § 2000e(f).

70.     Under Title VII, it is an unlawful employment practice for an employer "to discharge any individual, or otherwise to discriminate against any individual with respect to his [or her] compensation, terms, conditions, or privileges of employment, because of such individual's . . . religion."  42 U.S.C. § 2000e-2(a)(1).

71.     "Religion" is defined as including "all aspects of religious observance and practice, as well as belief."  42 U.S.C. § 2000e(j).

72.     The Equal Employment Opportunity Commission defines "religious practices" to "include all moral or ethical beliefs as to what is right and wrong which are sincerely held with the strength of traditional religious views."  29 C.F.R. § 1605.1.

73.     "[R]eligious practice is one of the protected characteristics that cannot be accorded disparate treatment and must be accommodated."  *EEOC v. Abercrombie & Fitch Stores, Inc.*, 575 U.S. 768, 774-75 (2015).

74.     Defendant BioMarin violated Title VII when it terminated Ms. Julian because of her sincerely held religious beliefs and failed to provide her a reasonable religious accommodation.

75.     Ms. Julian has a sincerely held religious belief that prevented her from receiving the Covid-19 vaccine.  Ms. Julian's beliefs arise under Christianity.

76.     Ms. Julian was an outstanding employee and valued member of her team.  No complaints were ever raised about her performance.

77.     Pursuant to Defendant BioMarin's Vaccine Mandate, receiving the Covid-19 vaccine was a condition of her continued employment.

78.     Ms. Julian informed Defendant BioMarin of her belief and requested that she be permitted to continue her job responsibilities without having to take the Covid-19 vaccine.  Ms. Julian even went above and beyond and volunteered to wear masks, take Covid-19 tests, and pay for any costs associated with quarantining prior to the few in person meetings that normally occurred each year, should such measures be required.

79.     Any health and safety concerns regarding Ms. Julian continuing in her duties as she had since 2018 as an unvaccinated person were at best hypothetical and unfounded.  Six months after her termination, Ms. Julian was offered a position with a competitor global pharmaceutical company and has been employed with that company ever since without any issues whatsoever.

80.   Defendant BioMarin could have simply granted Ms. Julian's request for religious accommodation since she was already (and had always been) a remote worker, but Defendant BioMarin refused Ms. Julian's request for accommodation.

81.   Defendant BioMarin's purported accommodation – indefinite unpaid leave (losing all benefits including health coverage) – merely provided the same option of the Vaccine Mandate: take the Covid-19 vaccine or be terminated.  Thus, it was not an accommodation at all.

82.   In contrast, Defendant BioMarin granted employees' accommodation requests that were not based on religion, including permitting at least one vaccinated employee to avoid travel.

83.   Granting accommodations for non-religious reasons to "compliant" employees and denying accommodations for religious reasons constitutes religious discrimination in violation of Title VII.

84.   Title VII demands more than "mere neutrality with regard to religious practices," requiring instead "favored treatment, affirmatively obligating employers not to 'fail or refuse to hire or discharge any individual . . . because of such individual's religious observance and practice.' " *Abercrombie*, 575 U.S. at 775.

85.   Employers are affirmatively required to "reasonably accommodate" an employee's religious beliefs, observances, and practices unless the accommodation would pose an "undue hardship on the conduct of the employer's business."  42 U.S.C. § 2000e(j).

86.     Despite the utter lack of an undue burden on Defendant BioMarin to accommodate the request for religious exemption, Ms. Julian was terminated after she refused Defendant BioMarin's efforts to force her to get the Covid-19 vaccine.

87.     If Ms. Julian had set aside her religious beliefs and taken the Covid-19 vaccine, Defendant BioMarin would not have fired Ms. Julian.  Thus, religion was a but-for cause of her termination.

88.     In the alternative, religion was a motivating factor in Ms. Julian's termination.

89.     Emails and calls by Ms. Julian's supervisors essentially urging her to "just take the vaccine" constitute direct evidence of discrimination in violation of Title VII.

90.     Ms. Julian's termination was in violation of Title VII of the Civil Rights Act, which prohibits discrimination on the basis of religion.  § 2000e-2.  The Act further requires covered employers to provide reasonable accommodation to an employee's sincerely held religious beliefs. § 2000e(j).

91.     Title VII prohibits Defendant BioMarin from scrutinizing what Defendant believes to be the sincerity of Ms. Julian's religious belief.

92.     Title VII also prohibits Defendant BioMarin from scrutinizing whether Ms. Julian's exercise of her beliefs is logical or as consistent as Defendant BioMarin believes they should be.

93.     Requests for reasonable accommodation must be considered based on their individual, particularized circumstances; any claim of undue hardship by the

employer must be assessed on a case-by-case basis rather than through application of a blanket rule.

94.    Defendant BioMarin applied a uniform, blanket rule in rejecting Ms. Julian's request for accommodation.

95.    As a direct result of Defendant BioMarin's discriminatory acts, Ms. Julian suffered a loss of employment, loss of income and stock options, loss of seniority, loss of healthcare benefits, distress, embarrassment, inconvenience, invasion of privacy, and humiliation.

WHEREFORE, Plaintiff requests that the Court enter judgment in her favor and award her the following relief:

a.   Damages representing front and back pay and all other sums of money, including retirement benefits and other employee benefits, together with interest on said amounts that Plaintiff Priscilla Julian has suffered due to Defendant BioMarin's discriminatory acts;

b.   Compensatory damages representing Plaintiff Priscilla Julian's mental anguish, loss of dignity, and any other intangible injuries caused as a result of Defendant BioMarin's retaliatory practices;

c.   All costs and attorney fees incurred in litigating this action;

d.   Pre- and post-judgment interest; and

e.    Any other relief the Court deems just and proper.

**COUNT II**

**RELIGIOUS DISCRIMINATION – DISPARATE IMPACT**
**IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964**
**42 U.S.C. § 2000e**

96.     Plaintiff Priscilla Julian restates and re-alleges the allegations of paragraphs 1 through 66 above.

97.     Defendant BioMarin is an "employer" within the meaning of 42 U.S.C. § 2000e(b).

98.     Ms. Julian is an "employee" within the meaning of 42 U.S.C. § 2000e(f).

99.     Under Title VII, it is an unlawful employment practice for an employer "to limit, segregate, or classify his employees . . . in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's . . . religion."  42 U.S.C. § 2000e-2(a)(2); *see also* 42 U.S.C. § 2000e-2(k).

100.    "Religion" is defined as including "all aspects of religious observance and practice, as well as belief."  42 U.S.C. § 2000e(j).

101.    Ms. Julian has a sincerely held religious belief that prevented her from receiving the Covid-19 vaccine.  Ms. Julian's beliefs arise under Christianity.

102.    Ms. Julian was an outstanding employee and valued member of her team.  No complaints were ever raised about her performance.

103.    Pursuant to Defendant BioMarin's Vaccine Mandate, receiving the Covid-19 vaccine was a condition of her continued employment.

104.   Defendant BioMarin's Covid-19 Vaccine Mandate adversely classified religious employees like Ms. Julian who hold strong beliefs against receiving the Covid-19 vaccine.

105.   Employees with religious objections to the Covid-19 vaccine and seeking religious exemptions from the Covid-19 vaccine were rendered unemployable as a result of Defendant BioMarin's Vaccine Mandate.

106.   Defendant BioMarin violated Title VII when it placed Ms. Julian into a disfavored class by issuing its Covid-19 Vaccine Mandate, when it failed to approve her reasonable request for accommodation, and when it terminated her employment.

107.   Ms. Julian informed Defendant BioMarin of her belief and requested that she be permitted to continue her job responsibilities in her remote position without having to take the Covid-19 vaccine.  Ms. Julian even went above and beyond and volunteered to wear masks, take Covid-19 tests, and pay for any costs associated with quarantining prior to the few in person meetings that normally occurred each year.  Thus, there was no business necessity in BioMarin's insistence that Ms. Julian receive the vaccine in order to continue employment.

108.   Any health and safety concerns regarding Ms. Julian continuing in her duties as she had since 2018 as an unvaccinated person were at best hypothetical and unfounded.  Six months after her termination, Ms. Julian was offered a position with a different global pharmaceutical company and has been employed with that company ever since without any issues whatsoever.

109.   Defendant BioMarin could have simply granted Ms. Julian's request for religious accommodation since she was already (and had always been) a remote worker, but Defendant BioMarin rejected the available alternatives, which had lesser discriminatory effects and would have been comparably as effective at serving Defendant BioMarin's business needs and rejected Ms. Julian's request for accommodation.

110.   Defendant BioMarin's purported accommodation – indefinite unpaid leave (losing all benefits including health coverage) – merely provided the same option of the Vaccine Mandate: take the Covid-19 vaccine or be terminated.  Thus, it was not an accommodation at all.

111.   In contrast, Defendant BioMarin granted employees' accommodation requests that were not based on religion, including permitting at least one vaccinated employee to avoid travel.

112.   Granting accommodations for non-religious reasons and denying accommodations for religious reasons constitutes religious discrimination in violation of Title VII.

113.   Title VII demands more than "mere neutrality with regard to religious practices," requiring instead "favored treatment, affirmatively obligating employers not to 'fail or refuse to hire or discharge any individual . . . because of such individual's religious observance and practice.' " *Abercrombie*, 575 U.S. at 775.

114.   Employers are affirmatively required to "reasonably accommodate" an employee's religious beliefs, observances, and practices unless the accommodation

would pose an "undue hardship on the conduct of the employer's business."   42 U.S.C. § 2000e(j).

115.   Despite the existence of alternatives with lesser discriminatory effects, Ms. Julian was terminated after she refused Defendant BioMarin's efforts to force her to get the Covid-19 vaccine.

116.   Ms. Julian's termination was in violation of Title VII of the Civil Rights Act, which prohibits discrimination on the basis of religion.   § 2000e-2.   The Act further requires covered employers to provide reasonable accommodation to an employee's sincerely held religious beliefs. § 2000e(j).

117.   Title VII prohibits Defendant BioMarin from scrutinizing what Defendant believes to be the sincerity of Ms. Julian's religious belief.

118.   Title VII also prohibits Defendant BioMarin from scrutinizing whether Ms. Julian's exercise of her beliefs is logical or as consistent as Defendant BioMarin believes they should be.

119.   As a direct result of Defendant BioMarin's discriminatory Vaccine Mandate, Ms. Julian suffered a loss of employment, loss of income and stock options, loss of healthcare benefits, distress, embarrassment, inconvenience, invasion of privacy, and humiliation.

WHEREFORE, Plaintiff requests that the Court enter judgment in her favor and award her the following relief:

a.  Damages representing front and back pay and all other sums of money, including retirement benefits and other employee benefits, together with interest on said amounts that Plaintiff Priscilla Julian has suffered due to Defendant BioMarin's discriminatory acts;

b.  Compensatory damages representing Plaintiff Priscilla Julian's mental anguish, loss of dignity, and any other intangible injuries caused as a result of Defendant BioMarin's retaliatory practices;

c.  All costs and attorney fees incurred in litigating this action;

d.  Pre- and post-judgment interest; and

e.   Any other relief the Court deems just and proper.

## COUNT III

### RETALIATION
### IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964
### 42 U.S.C. § 2000e

120.   Plaintiff Priscilla Julian restates and re-alleges the allegations of paragraphs 1 through 66 above.

121.   Defendant BioMarin is an "employer" within the meaning of 42 U.S.C. § 2000e(b).

122.   Ms. Julian is an "employee" within the meaning of 42 U.S.C. § 2000e(f).

123.   Under Title VII, it is an unlawful employment practice for an employer "discriminate against" an employee because she "opposed" a practice that Title VII

forbids or has "made a charge, testified, assisted, or participated" in a Title VII "investigation, proceeding, or hearing." 42 U.S.C. § 2000e-3(a).

124. "Religion" is defined as including "all aspects of religious observance and practice, as well as belief." 42 U.S.C. § 2000e(j).

125. Ms. Julian has a sincerely held religious belief that prevented her from receiving the Covid-19 vaccine. Ms. Julian's beliefs arise under Christianity.

126. Ms. Julian was an outstanding employee and valued member of her team. No complaints were ever raised about her performance.

127. Prior to issuing its Vaccine Mandate, Defendant BioMarin sent multiple communications to Ms. Julian urging her to get vaccinated.

128. Once Defendant BioMarin issued its Vaccine Mandate, receiving the Covid-19 vaccine became a condition of her continued employment.

129. Ms. Julian submitted a written letter requesting a religious exemption and setting forth her religious beliefs and the reasons she was compelled to reject the Covid-19 vaccine. Two days after Ms. Julian requested religious accommodation from the Vaccine Mandate, Defendant BioMarin added a small travel requirement to her job description.

130. Defendant BioMarin rejected Ms. Julian's request for a religious accommodation and retaliated against her for submitting the request for religious exemption from Defendant BioMarin's Vaccine Mandate.

131.   Defendant BioMarin violated Title VII when it terminated Ms. Julian's employment in retaliation for requesting the exemption and articulating why vaccines were religiously, morally, and ethically objectionable.

132.   Ms. Julian informed Defendant BioMarin of her belief and requested that she be permitted to continue her job responsibilities without having to take the Covid-19 vaccine.  Ms. Julian even went above and beyond and volunteered to wear masks, take Covid-19 tests, and pay for any costs associated with quarantining prior to the few in-person meetings that normally occurred each year.

133.   Ms. Julian could have been accommodated even without the extra costs she volunteered to cover and the testing and masking requirements she volunteered to endure but unfortunately Defendant BioMarin generated an excuse for each of Ms. Julian's concessions, instead terminating her because she submitted her objection to the Vaccine Mandate in her request for religious exemption.

134.   Any health and safety concerns regarding Ms. Julian continuing in her duties as she had since 2018 as an unvaccinated person were at best hypothetical and unfounded.  Six months after her termination, Ms. Julian was offered a position with a different global pharmaceutical company and has been employed with that company ever since without any issues whatsoever.

135.   Defendant BioMarin could have simply granted Ms. Julian's request for religious accommodation since she was already (and had always been) a remote worker, but Defendant BioMarin refused Ms. Julian's request for accommodation.

136.   Defendant BioMarin's purported accommodation – indefinite unpaid leave until she submitted to the vaccine or termination – further demonstrates the retaliatory nature of Defendant BioMarin's adverse employment action.

137.   In contrast, Defendant BioMarin granted employees' accommodation requests that were not based on religion, including permitting at least one vaccinated employee to avoid travel.

138.   Granting accommodations for non-religious reasons and denying accommodations for religious reasons constitutes religious discrimination in violation of Title VII and shows the retaliatory nature of Defendant BioMarin's decision to terminate Ms. Julian.

139.   Title VII demands more than "mere neutrality with regard to religious practices," requiring instead "favored treatment, affirmatively obligating employers not to 'fail or refuse to hire or discharge any individual . . . because of such individual's religious observance and practice.' " *Abercrombie*, 575 U.S. at 775.

140.   Employers are affirmatively required to "reasonably accommodate" an employee's religious beliefs, observances, and practices unless the accommodation would pose an "undue hardship on the conduct of the employer's business."  42 U.S.C. § 2000e(j).

141.   Despite the utter lack of an undue burden on Defendant BioMarin to accommodate the request for religious exemption, Ms. Julian was terminated after she refused Defendant BioMarin's efforts to force her to get the Covid-19 vaccine.

142.   Ms. Julian's termination was in violation of Title VII of the Civil Rights Act, which prohibits retaliation after an employee engages in protected activity.  The Act further requires covered employers to provide reasonable accommodation to an employee's sincerely held religious beliefs.  § 2000e(j).

143.   Title VII prohibits Defendant BioMarin from scrutinizing what Defendant believes to be the sincerity of Ms. Julian's religious belief.

144.   Instead   of   providing   the   readily   available   and   reasonable accommodation requested by Ms. Julian, Defendant BioMarin rejected Ms. Julian's request and instead terminated her for submitting her religious exemption letter.

145.   As   a   direct   result   of   Defendant   BioMarin's   retaliatory   and discriminatory acts, Ms. Julian suffered a loss of employment, loss of income and stock options, loss of healthcare benefits, distress, embarrassment, inconvenience, invasion of privacy, and humiliation.

WHEREFORE, Plaintiff requests that the Court enter judgment in her favor and award her the following relief:

a.   Damages representing front and back pay and all other sums of money, including retirement benefits and other employee benefits, together with interest on said amounts that Plaintiff Priscilla Julian has   suffered   due   to   Defendant   BioMarin's   retaliatory   and discriminatory acts;

b. Compensatory damages representing Plaintiff Priscilla Julian's mental anguish, loss of dignity, and any other intangible injuries caused as a result of Defendant BioMarin's retaliatory practices;

c. All costs and attorney fees incurred in litigating this action;

d. Pre- and post-judgment interest; and

e. Any other relief the Court deems just and proper.

## COUNT IV

## RELIGIOUS DISCRIMINATION IN VIOLATION OF
## THE FLORIDA CIVIL RIGHTS ACT

146. Plaintiff Priscilla Julian restates and re-alleges the allegations of paragraphs 1 through 66 above.

147. This is an action against Defendant BioMarin pursuant to the Florida Civil Rights Act of 1992 ("FCRA"), Section 760.01, *et seq.*, Florida Statutes.

148. Defendant, BioMarin, discriminated against Ms. Julian with regard to the term, conditions, and privileges of her employment because of Ms. Julian's religion, in violation of Section 760.01, *et seq*. Florida Statutes.

149. Despite Ms. Julian being employed as a Remote Field Coordinator and working in a position that had always been remote (include pre-pandemic), Defendant BioMarin denied Ms. Julian's request for a religious exemption from its Vaccine Mandate.

150.    Defendant BioMarin granted an accommodation to at least one vaccinated employee by allowing that employee to avoid travel and continue appearing at meetings virtually.

151.    Defendant BioMarin's urging Ms. Julian to take the vaccine against her religious beliefs, questioning the consistency of her religious beliefs, requiring her to enter her vaccine information into a company database, implying to Ms. Julian that she was putting her colleagues and patients in harm's way since she would not take the vaccine, and changing her job description after she refused to take the vaccine demonstrates that Defendant's actions were willful and malicious.

152.    As a direct result of Defendant BioMarin's discriminatory acts, Ms. Julian suffered a loss of employment, loss of income – including salary in addition to loss of bonus and loss of stock options, loss of unemployment benefits, loss of healthcare benefits, distress, embarrassment, inconvenience, invasion of privacy, and humiliation.

WHEREFORE, Plaintiff requests that the Court enter judgment in her favor and award her the following relief:

a.   Damages representing front and back pay and all other sums of money, including retirement benefits and other employee benefits, together with interest on said amounts that Plaintiff Priscilla Julian has suffered due to Defendant BioMarin's discriminatory acts;

b. Compensatory damages representing Plaintiff Priscilla Julian's mental anguish, loss of dignity, and any other intangible injuries caused as a result of Defendant BioMarin's discriminatory practices;

c. Punitive damages representing Plaintiff Priscilla Julian's mental anguish, loss of dignity, and any other intangible injuries caused as a result of Defendant BioMarin's willful and malicious acts;

d. All costs and attorney fees incurred in litigating this action;

e. Pre- and post-judgment interest; and

f. Any other relief the Court deems just and proper.

## COUNT V

## RETALIATION IN VIOLATION OF
## THE FLORIDA CIVIL RIGHTS ACT

153. Plaintiff Priscilla Julian restates and re-alleges the allegations of paragraphs 1 through 66 above.

154. This is an action against Defendant BioMarin pursuant to the Florida Civil Rights Act of 1992 ("FCRA"), Section 760.01, *et seq*., Florida Statutes.

155. Defendant, BioMarin, retaliated against Ms. Julian with regard to the term, conditions, and privileges of her employment because of Ms. Julian's protected activity related to her religious beliefs, in violation of Section 760.01, *et seq*. Florida Statutes.

156. Despite Ms. Julian being employed as a Remote Field Coordinator and working in a position that had always been remote (include pre-pandemic),

Defendant BioMarin denied Ms. Julian's request for a religious exemption from its Vaccine Mandate.

157.   Defendant BioMarin granted an accommodation to at least one vaccinated employee by allowing that employee to avoid travel and continue appearing at meetings virtually.

158.   However, Defendant BioMarin terminated Ms. Julian because she submitted a letter requesting religious exemption from BioMarin's Vaccine Mandate. Ms. Julian's letter that forth her convictions regarding why vaccines are religiously, morally, and ethically objectionable is protected speech under the FCRA.

159.   Defendant BioMarin's urging Ms. Julian to take the vaccine against her religious beliefs, questioning the consistency of her religious beliefs, requiring her to enter her vaccine information into a company database, implying to Ms. Julian that she was putting her colleagues and patients in harm's way since she would not take the vaccine, and changing her job description after she refused to take the vaccine demonstrates that Defendant's actions were willful and malicious.

160.   As a direct result of Defendant BioMarin's retaliatory acts, Ms. Julian suffered a loss of employment, loss of income – including salary in addition to loss of bonus and loss of stock options, loss of unemployment benefits, loss of healthcare benefits, distress, embarrassment, inconvenience, invasion of privacy, and humiliation.

WHEREFORE, Plaintiff requests that the Court enter judgment in her favor and award her the following relief:

a.  Damages representing front and back pay and all other sums of money, including retirement benefits and other employee benefits, together with interest on said amounts that Plaintiff Priscilla Julian has suffered due to Defendant BioMarin's discriminatory acts;

b.  Compensatory damages representing Plaintiff Priscilla Julian's mental anguish, loss of dignity, and any other intangible injuries caused as a result of Defendant BioMarin's retaliatory practices;

c.  Punitive damages representing Plaintiff Priscilla Julian's mental anguish, loss of dignity, and any other intangible injuries caused as a result of Defendant BioMarin's willful and malicious acts;

d.  All costs and attorney fees incurred in litigating this action;

e.  Pre- and post-judgment interest; and

f.   Any other relief the Court deems just and proper.

## JURY TRIAL DEMAND

Ms. Julian demands trial by jury on all issues so triable.

Respectfully submitted October 26, 2022.

CAMPBELL TROHN
TAMAYO & ARANDA, P.A.

/s/ Jennifer Vasquez
JENNIFER VASQUEZ
Fla. Bar No. 71942
ROBERT ARANDA
Fla. Bar No. 988324
P.O. Box 2369
Lakeland, FL 33806
Tel: (863) 686-0043
Fax: (863) 616-1445
j.vasquez@cttalaw.com
r.aranda@cttalaw.com
ATTORNEYS FOR PLAINTFF